UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>V.  )<br>  )<br>JAY TODD GIBSON,  )<br>  )<br>  Defendant.  )  | Criminal Action No. 5: 14-074-DCR<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Defendant Jay Todd Gibson has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Record No. 683] Gibson pleaded guilty on November 14, 2014, to one count of conspiring to illegally distribute a large amount of oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846. [*See* Record Nos. 174 and 175.] He was sentenced on February 18, 2015, to 145 months' imprisonment, to be followed by a five-year term of supervised release. [*See* Record Nos. 260 and 263.] The defendant is incarcerated at USP Marion and the Bureau of Prisons ("BOP") projects that he will be released on September 18, 2024. *See* Find an Inmate, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited March 18, 2022).

Gibson did not file a direct appeal or a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. But he is no stranger to compassionate release motions. He has filed two prior motions for sentence reductions [Record Nos. 633 and 670], which were denied in Memorandum Opinion and Orders issued on April 28, 2021, and October 12, 2021. [Record Nos. 632 and 669]

- 1 -

Undeterred, Gibson has filed a third motion for compassionate release. [Record No. 683] He asserts that multiple extraordinary and compelling reasons warrant relief, including allegations that: (1) the Court miscalculated his offense level, which accounted for 250 oxycodone pills that should not have been attributed to him after he allegedly withdrew from the conspiracy on May 27, 2014; (2) the Court miscalculated his offense level because it failed to account for his personal use of the oxycodone pills, as well as that of his co-conspirators; (3) the Court should reduce his sentence consistent with a mitigating role adjustment under U.S.S.G. § 3B1.2, the application of which was expanded by Amendment 794 after he was sentenced; (4) he inappropriately received a sentence comparable to that of Co-Defendant Jeffrey Wingate, the conspiracy's "Big Dawg" who was sentenced to 150 months' imprisonment and has benefited from the "early release programs of the Government"; (5) he was improperly convicted of a standalone § 841(a)(1) violation and sentenced for that crime; (6) he is in poor health and his condition puts him at risk of contracting the COVID-19 virus; and (7) his family circumstances merit a sentence reduction. [*See id.*] Gibson further contends that the 18 U.S.C. § 3553(a) factors support relief. [*Id.* at pp. 8-9.]

The United States has responded to the latest motion, arguing that no extraordinary and compelling reasons warrant relief and that the § 3553(a) factors do not support a sentence reduction. [*See* Record No. 685.] The Court agrees with the government's position and the motion will be denied for the reasons more fully explained below.

I.

A Court may not grant a compassionate release motion under § 3582(c)(1)(A)(i) without engaging in a three-step inquiry: (1) "the court must find that extraordinary and

compelling reasons warrant a sentence reduction"; (2) the court must "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the court must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (cleaned up) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)). "Congress provided no statutory definition of 'extraordinary and compelling reasons,' instead delegating that task to the [United States] Sentencing Commission." *Id.* (citing 28 U.S.C. § 994(t)).

The Sentencing Commission subsequently issued U.S.S.G. § 1B1.13, a policy statement with Application Notes that prescribe categories of "extraordinary and compelling reasons" for a sentence reduction. *See id.*; U.S.S.G. § 1B1.13 n. 1. But this is "not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Elias*, 984 F.3d at 519.

Accordingly, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id.* at 519-20 (citations omitted). "But the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (emphasis in original) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Instead, courts look to the "ordinary meaning [of the terms] at the time Congress enacted the statute." *Id.* Using this method, "extraordinary" for the purposes of the statute means "most unusual," "far from common," and "having little or no precedent." *Id.* (quoting Webster's Third New International Dictionary: Unabridged 807 (1971)). And "compelling"

means "forcing, impelling, driving." *Id.* (quoting Webster's Third New International Dictionary: Unabridged at 463).

Additionally, a court may "permissively consider" the § 1B1.13 policy statement "as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release." *United States v. Tomes*, 990 F.3d 500, 503 n. 1 (6th Cir. 2021). Thus, the nonbinding policy statement may be instructive when a defendant alleges extraordinary and compelling reasons that relate to its provisions. *See*, *e.g.*, *United States v. Gibson*, No. 5: 14-074-DCR, 2021 WL 4768244, at *2 (E.D. Ky. Oct. 12, 2021).

**II.**

Several matters stand out when looking at the defendant's alleged extraordinary and compelling reasons for relief. First, as the United States asserts, § 3582(c)(1)(A)(i) is not the proper statutory vehicle for many of Gibson's arguments. [Record No. 685, pp. 2-3] These include his § 841 claim,[1] the assertions that the Court miscalculated his sentence, and most, if not all, of his arguments regarding the § 3B1.2 mitigating role adjustment. The United States Court of Appeals for the Sixth Circuit has repeatedly determined in unpublished orders that arguments concerning the validity of a conviction or sentence should be raised in a direct appeal or 28 U.S.C. § 2255 motion, and not a compassionate release motion. *See*, *e.g.*, *United States v. Westine*, No. 21-5248, 2021 U.S. App. LEXIS 29649, at *5 (6th Cir. Sept. 30, 2021);

---

[1] Additionally, the § 841 argument is frivolous. The Court's October 12, 2021, Memorandum Opinion and Order explained, in detail, why the Judgment and Indictment in this case cite § 841, as well as § 846, to describe the conspiracy charge. [Record No. 669, pp. 6-7] And even if Gibson did not misunderstand the relevant § 841 citations, he would not be entitled to relief. At best, he alleges a clerical error that would not be grounds for a sentence reduction.

*United States v. Toaz*, No. 20-1561, 2020 U.S. App. LEXIS 33439, at *5-6 (6th Cir. Oct. 22, 2020); *United States v. Mattice*, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020). This is consistent with binding authority that: (1) "identifying 'extraordinary and compelling reasons' is a task that focuses on post-sentencing factual developments"; and therefore, (2) "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Hunter*, 12 F.4th at 569-70.

Indeed, Gibson seems to realize that a § 2255 motion would be better suited for his arguments. At times, his motion claims that counsel was ineffective for failing to raise the issues, and he expressly acknowledges that the limitations period of § 2255(f) would bar habeas relief. [*See* Record No. 683, pp. 4, 7.] But the limitations bar does not change the fact that he cannot use a § 3582(c)(1)(A)(i) motion to obtain relief on these grounds. If he wanted to contest these issues, he could and should have raised them in earlier proceedings.

The defendant also cites Amendment 794 in support of his § 3B1.2 mitigating role adjustment argument. [Record No. 683, p. 5] Amendment 794 became effective on November 1, 2015, *i.e.*, after Gibson was sentenced. *See* Amendment 794, UNITED STATES SENTENCING COMMISSION, https://www.ussc.gov/guidelines/amendment/794 (last visited Mar. 18, 2022). The amendment did not alter the language of § 3B1.2 but amended its Application Notes to "provide[] additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." [*Id.*]

To the extent the defendant asserts that his sentence should be reduced consistent with Amendment 794 and this argument is not foreclosed for the reasons stated above, his claim lacks merit. First, Gibson has not shown that Amendment 794's application would make any

difference. Contrary to his present assertions, the defendant's involvement in the underlying conspiracy was substantial. For example, Gibson himself has admitted in a prior filing to personally selling "as many as 3,625 30 milligram oxycodone pills during the course of the conspiracy." [Record No. 234, p. 1] He does not offer any detailed explanation of how the application of Amendment 794 would result in a mitigating role adjustment, and the Court can see no reason why it would.

Further, Amendment 794 is not among the retroactive amendments listed in U.S.S.G. § 1B1.10. If it were, Gibson might be able to use a different statutory mechanism, § 3582(c)(2), to argue that he is entitled to a sentence reduction based on a subsequently-lowered Guidelines range. Again, Gibson appears to realize that he is not able to pursue this course, as he acknowledges that he "does not have a direct claim for relief under Amendment 794." [Record No. 683, p. 5] The fact that another statutory mechanism for a sentence reduction based on Guidelines amendments exists does not weigh in his favor, particularly where there are no other extraordinary and compelling reasons for relief.

Additionally, many defendants sentenced prior to Amendment 794 could advance similar arguments in an effort to litigate or relitigate fact-intensive role adjustment disputes that were, or should have been, raised in prior proceedings. Thus, the defendant's reliance on the amendment is neither "extraordinary" nor "compelling" as those terms are used in § 3582(c)(1)(A)(i).

Gibson's other points fare no better. The defendant's complaints about Wingate's initial sentence and participation in the "early release programs of the government" are

nonstarters.[2] These arguments are not related to any change in *Gibson's* personal circumstances that might justify relief. *See Hunter*, 12 F.4th at 569, 571-72. Gibson's sentence was, and remains, warranted based on his individualized circumstances, and his co-defendant's incarceration status is not relevant to the present inquiry.

Turning to the health-based arguments, Gibson states that he has high blood pressure, borderline diabetes, severe obesity, asthma, emphysema, and moderate to severe atherosclerotic disease to the distal abdominal aorta and common iliac arteries. [Record No. 683, p. 7] He also claims that he "needs to see a vascular surgeon." [*Id.*] However, he provides no documentation regarding the status and severity of these conditions, which is itself a reason to deny relief insofar as the defendant claims that they justify compassionate release independent of COVID-19 concerns. *See Elias*, 984 F.3d at 520.

Moreover, the § 1B1.13 policy statement, while not binding, is instructive here. The Application Notes provide the following criteria that describe when the "Medical Condition of the Defendant" may constitute an extraordinary and compelling reason for relief:

> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not

---

[2] Although the defendant does not elaborate on these "early release programs of the government," it appears that the BOP has placed Wingate on home confinement pursuant to 18 U.S.C. § 3624(c). *See* Find an Inmate, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Mar. 18, 2022). Of course, the Court has no authority over the BOP's placement decisions and played no role in determining that home confinement is appropriate for Wingate. *See, e.g.*, *United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020).

> required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 n. 1(A). The defendant's alleged medical problems do not meet these criteria, and Gibson's representations do not indicate that they are otherwise extraordinary or compelling.

Further, Gibson has repeatedly asserted that medical problems justify early release from incarceration when considered in conjunction with the threat of COVID-19. [*See* Record Nos. 633 and 670.] But as the Court explained in its October 2021 Memorandum Opinion and Order [Record No. 669, pp. 5-6], the Sixth Circuit has held that a "defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)).

Gibson admits that he is vaccinated, yet contends that "his vaccinations are not effective against the [COVID-19] Omicron variant." [Record No. 683, p. 7] This is not a persuasive argument for two reasons. First, vaccines effectively guard against severe cases of Omicron variant COVID-19. *See* COVID-19 Vaccines Are Effective Against Most Variants, CENTERS FOR DISEASE CONTROL AND PREVENTION (Dec. 23, 2021),

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Mar. 18, 2022) ("COVID-19 vaccines are effective against the Delta variant and other variants with widespread circulation in the United States. *Current vaccines are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant.*") (emphasis in original). Second, the Omicron variant has predominated since December 2021. *See* Variant Proportions, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#variant-proportions (last visited Mar. 18, 2022). And courts have applied *Lemons* despite the prevalence of this strain. *See*, *e.g.*, *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022); *United States v. Kennedy*, No. 21-2675, 2022 WL 43187, at *2-3 (6th Cir. Jan. 5, 2022). Gibson's vaccination will sufficiently mitigate any risks posed by COVID-19, and his arguments to the contrary do not present any extraordinary and compelling reason for relief.[3]

---

[3] As the United States points out [Record No. 685, p. 4], it is also worth noting that COVID-19 exposure at USP Marion is negligible. That facility has only one active case among 1,234 inmates. *See* COVID-19 Cases, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Mar. 18, 2022); USP Marion, BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/mar/ (last visited Mar. 18, 2022).

Finally, the Court addresses the defendant's family circumstances arguments. Gibson claims that he needs to provide for his fourteen-year-old daughter emotionally and financially.[4] [Record No. 683, p. 9] He also asserts that his sister has been recently diagnosed with lung cancer and that he has already lost his mother and another sister while incarcerated. [*Id.*] Again, the nonbinding policy statement is instructive. Its Application Notes provide the following criteria for "Family Circumstances" which may constitute extraordinary and compelling reasons for compassionate release:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13 n. 1(C). Gibson's family concerns do not fit these criteria. And notwithstanding the policy statement, his desire to spend time and care for family members is generally not "extraordinary" because nearly all incarcerated defendants share similar desires.

In short, none of the grounds for relief cited by the defendant constitute "extraordinary and compelling reasons" for the purposes of § 3582(c)(1)(A)(i). Thus, the motion must be denied. *See Lemons*, 15 F.4th at 749 (explaining that "the combination of grounds for release,

---

[4] This argument is factually dubious. Gibson's 2015 Presentence Investigation Report ("PSR") indicates that he has two adult daughters from prior relationships. [*See* PSR, ¶¶ 94-95.] Co-Defendant Katherine Jones' PSR indicates that she is the mother of the child referenced in the pending motion and that the child's father is Darrell Woolridge. [*See* Record No. 272, ¶ 88.] Thus, either Gibson and Jones were not candid during their interviews with the United States Probation Office prior to sentencing, or the defendant is misleading the Court in an attempt to better his chances of relief.

none of which independently supports a sentence reduction, does not collectively entitle a defendant to a sentence reduction.") (citations and internal quotation marks omitted).

### III.

The Court's prior Memorandum Opinion and Orders explained why Gibson's sentence remains appropriate for the purposes of the § 3553(a) factors. [Record Nos. 632 and 669] In brief: (1) Gibson's offense was serious because he participated in a large drug conspiracy, personally distributed thousands of oxycodone pills, and threatened a confidential informant; (2) reducing the sentence would unduly diminish the severity of the conduct; (3) Gibson has a significant criminal history with convictions in twenty-two cases, some of which included second degree robbery, fourth degree aggravated assault, and multiple prior drug trafficking incidents; and (4) Gibson's willingness to sell dangerous narcotics to further his addiction and his extensive criminal history make it necessary to protect the public from potential future crimes. [Record Nos. 632, pp. 7-8 and 669, pp. 7-8] The Court likewise found that the original sentence continues to reflect the needs to promote respect for the law, provide a just punishment, and adequately deter criminal conduct. [Record No. 669, p. 7] The § 3553(a) factors weighed against relief even when the Court accounted for his health and rehabilitative efforts in prison. [Record Nos. 632, pp. 7-8 and 669, p. 8]

Nothing has changed. Gibson attempts to recharacterize the seriousness of his offense by reiterating his assertions that: (1) fewer pills should have been attributed to him because he allegedly withdrew from the conspiracy on May 27, 2014; and (2) he should have received a mitigating role adjustment. But both of these arguments are baseless.

First, the defendant bears the burden of proving withdrawal from a conspiracy, and he must demonstrate that he "took affirmative action to defeat or disavow the purpose of the conspiracy." *E.g.*, *United States v. Bucio*, 857 F. App'x 217, 220 (6th Cir. 2021) (addressing withdrawal from a conspiracy in the context of sentencing). Gibson points to a May 27, 2014 conversation with Co-Defendant Eric Gonzalez to demonstrate the alleged withdrawal. [Record No. 683, pp. 1-2] The PSR describes this episode as follows:

> On May 27, 2014, law enforcement personnel overheard a conversation between Gonzalez and Gibson. During the conversation, Gonzalez told Gibson that he (Gonzalez) intended to leave town for vacation on May 29, 2014, and that he would "shut everything down." Gibson became upset with Gonzalez and stated that "after six months he was not trusted." Gonzalez replied, "No." Gonzalez advised Gibson "he was pushing all the wrong buttons." Gibson then stated he had never betrayed Gonzalez's trust.

[PSR, ¶ 27] Gibson did not take affirmative action to defeat or disavow the purpose of the conspiracy. Instead, he did the opposite, complaining when his co-conspirator did not trust him to carry on in his stead.[5] Further, law enforcement officers observed evidence of drug trafficking when they arrested Gibson on June 3, 2014, *i.e.*, after the date he claims he withdrew from the conspiracy. [*Id.* at ¶ 31.]

And again, Gobson has not shown that he had an insignificant role in the conspiracy. His involvement was substantial, and he has previously admitted to personally selling as many as 3,625 30 milligram oxycodone pills. Notwithstanding any Guidelines considerations, the sentence imposed appropriately reflects the seriousness of the offense for the purposes of § 3553(a)(2)(A).

---

[5] The conspiracy continued to operate after Gonzalez left town. [*See* PSR ¶¶ 28-31.]

Gibson also attempts to recharacterize portions of his criminal history. He accurately states that he committed the second-degree robbery thirty-seven years ago when he was eighteen years old, but he does not question the seriousness of that offense, during which he held up a store using a revolver. [PSR, ¶ 63] And nine of his other prior cases that resulted in criminal convictions also involved stealing property, attempting to steal property, or possessing stolen property. [*See id.* at ¶¶ 64-65, 68-69, 71-72, 81, 83-84] Those cases, which span from 1985 to 2013, evidence a clear pattern of criminal behavior. [*See id.*]

Gibson does not try to recharacterize his prior drug trafficking convictions, which are quite serious. But he does assert that his fourth-degree aggravated assault conviction relates to "a very minor incident between him and Ms. Jones." [Record No. 683, p. 8] Describing this episode, the PSR states: "The defendant kicked the victim in the back, slammed her head on the wall, and choked her." [PSR, ¶ 70] If this is Gibson's idea of a "very minor incident," one can hardly wonder why the § 3553(a) factors do not support release.

The defendant also cites his rehabilitative efforts, indicating that he has achieved sobriety and taken various courses while incarcerated. [Record No. 683, pp. 8-9] These are, of course, positive developments. But the § 3553(a) factors continue to weigh against relief and provide an independent reason why the motion must be denied.

### IV.

In summary, the defendant has not presented any extraordinary and compelling reason that could warrant a sentence reduction. But even if he had, the § 3553(a) factors continue to weigh against compassionate release. Accordingly, it is hereby

**ORDERED** that Defendant Jay Todd Gibson's motion for compassionate release [Record No. 683] is **DENIED**.

Dated: March 21, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky